GEORGIA A. GREMS, Plaintiff, v. G. LE ROY TRAVER, as Trustee in Bankruptcy of HARRY B. GREMS et al., Defendants.*

(Supreme Court, Jefferson Special Term, May, 1914.)

Insurance (life) — what included in terms of policy when married woman insures life of her husband for her sole use — liability of insured in his schedules in bankruptcy — when claim of exemption allowed — what rights passed to trustee in bankruptcy.

Section 52 of the Domestic Relations Law, which is a substantial re-enactment of Laws of 1840, chapter 80, making it lawful for a married woman, for her sole use, to insure the life of her husband, includes within its terms insurance negotiated by him and made payable to the wife as well as insurance which she herself placed upon his life.

While chapter 80 of the Laws of 1840 as amended was in force a twenty-year semi-tontine policy of insurance on the life of a husband was issued to his wife upon an application signed by him in her name, which policy provided that in case she predeceased him payment of the insurance money should be made to the personal representatives of the husband, and, further, that upon completion of the tontine dividend period he should have, without her consent, the option to withdraw in cash the accumulated surplus leaving the policy participating and full paid for its face, or, if he was in good health, to apply said surplus to the purchase of a non-forfeitable participating paid-up addition to the face of the policy, or, without proof of good health, to apply said surplus to purchase an annuity or to surrender the policy and receive therefor in cash its entire share of assets. Thereafter the husband in his own name signed an application for insurance with the same company and a policy in which the wife was named as beneficiary was issued which provided that if no beneficiary should survive the insured then payment of the policy should be made to the personal representatives of the deceased, and, further, that the

* Received too late for insertion in proper place.— [REPORTER.

insured might change the beneficiary at any time by filing a written request therefor duly acknowledged and accompanied by the policy. The insured on handing the policies to his wife stated that they were her property and that she should hold and keep them as a matter of protection, which she did for several years and until they were put in a safety deposit box rented by the husband and there remained until after his adjudication as a bankrupt, and were listed by him in his schedules and his claim of exemption thereof was disallowed by his trustee in bankruptcy. Held;

That no rights in said policies of insurance passed to the husband's trustee in bankruptcy.

That the wife possessed certain vested rights in said policies of insurance and was entitled to a decree adjudging her interest therein and restraining said trustee from collecting or enforcing the same, or collecting the surrender value thereof.

ACTION to restrain defendant Traver from enforcing certain policies of life insurance upon the life of his bankrupt.

Cobb & Cosgrove, for plaintiff.

Pritcher & O'Brien, for defendant Traver.

Purcell, Cullen & Purcell, for defendant Northwestern Mutual Life Insurance Company.

Smith & Phelps, for bankrupt.

EMERSON, J. The plaintiff, claiming to be the owner of two policies of life insurance issued by the Northwestern Mutual Life Insurance Company upon the life of her husband, Harry B. Grems, seeks by this action to restrain his trustee in bankruptcy from collecting or enforcing the same and also asks a decree adjudging her to be the owner of said policies of insurance.

The policies in question were issued and held by the parties under the following circumstances:

In the year 1893 the husband was at work in a store in Rochester and, a child having been born to them, he signed an application for life insurance in the name of his wife, upon which application policy No. 274,703 was issued by the defendant insurance company on January 21, 1893. This policy was what is called a semi-tontine policy and by its terms in consideration of the statements contained in the application and the quarterly payment of $7.60 said insurance company agreed to pay to plaintiff as beneficiary, wife of Harry B. Grems, the insured, the sum of $1,000 in sixty days after due proof of the fact and cause of his death, provided, however, that if said beneficiary should not survive the insured then such payment should be made to the personal representatives of said insured. The tontine dividend period fixed by the policy was twenty years and it further provided that upon completion of the tontine dividend period the said assured should without the consent of the beneficiary have the option to withdraw in cash the accumulated surplus leaving the policy participating and full paid for its face or, if insured was in good health, to apply said surplus to the purchase of a non-forfeitable participating paid-up addition to the face of the policy or, without proof of good health, to apply said surplus to purchase an annuity or to surrender the policy and receive therefor in cash its entire share of assets. Later on and in the year 1898 the parties moved to Watertown and, having had another child born, after further talk upon the subject the husband in his own name signed another application for insurance in the same company upon which policy No. 407,265 was issued. This policy provided that in consideration of the payment of an annual

premium of $66.34 during the period of twenty years said insurance company promised to pay to the plaintiff beneficiary, wife of Harry B. Grems, the insured, subject to right of the insured to change beneficiary as therein stated, the sum of $2,000 in sixty days after due proof of the fact and cause of his death, provided, however, if no beneficiary should survive the said insured then such payment should be made to his personal representatives. Said policy further provided that the insured might change the beneficiary at any time by filing a written request therefor duly acknowledged and accompanied by the said policy.

Said policies were delivered by the company to Grems who took them home and handed them to his wife, stating that they were her property and that she should hold and keep them as a matter of protection. The wife put them in her trunk or bureau drawer and kept them there until about the year 1908 when, Grems having rented a safe deposit box where he kept his valuable papers, these policies were put in said box for safe-keeping and there remained down to the time this controversy arose.

Following the execution of said policies the premiums thereon were paid by both Grems and his wife, such payments, however, all being made from money furnished by Grems.

The tontine dividend period expired on January 21, 1913, and with the consent of the wife, and upon a receipt signed by her, Grems drew the tontine accumulation of $222.79, leaving the policy to continue as paid up insurance. This was done under an agreement between the parties that Grems should have the tontine surplus to use in his business, the policy to be continued as an insurance for the benefit of his wife.

About June 1, 1913, Grems filed a petition in bank-

ruptcy and thereafter the defendant G. Le Roy Traver was appointed his trustee in bankruptcy. The bankrupt caused to be made out and verified schedules in bankruptcy in which the policies in question were listed as securities. Later on, however, he filed with the trustee a claim of exemption as to said policies which claim was disallowed by the trustee. Thereafter a controversy arose over the possession of said policies. The trustee claimed that they belonged to the bankrupt and that he was entitled to them as such trustee and threatened to surrender them to the insurance company and receive their present value as assets of the bankrupt estate.

The plaintiff thereupon brought this action to restrain such disposition and for a decree adjudging her to be the owner of the same. The important question in the case, therefore, is who was the beneficial owner of the policies for, if owned by the husband, they would go to the trustee as part of the assigned estate, otherwise to the wife to be held for her future protection.

In determining this question we should in the first instance have in mind certain principles upon which the doctrine of life insurance is based and the evolutions of statutory law upon the subject. At common law it was necessary to have an insurable interest in order to sustain a policy upon the life of another. Otherwise the policy was a mere wager contract and, therefore, invalid. *Ruse* v. *Mutual Ben. Life Ins. Co.,* 23 N. Y. 516.

It was for a long time a mooted question whether at common law a wife had an insurable interest in the life of her husband and could insure the same for a gross sum. Also whether all interest did not cease and the policy lapse with her death. *Ruppert* v. *Union Mutual Ins. Co.,* 7 Robt. 155, 156; *Frank* v. *Mutual Life Ins. Co.,* 102 N. Y. 273, 274; *Barry* v. *Equitable Life*

*Assur. Soc.,* 59 id. 592, 593; *Whitehead* v. *New York Life Ins. Co.,* 102 id. 151.

To remedy this condition and set the question at rest the legislature enacted chapter 80, Laws of 1840, the first section of which act reads as follows: " It shall be lawful for any married woman, by herself, and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable, by the terms of the insurance, shall be payable to her, to and for her own use, free from claims of the representatives of her husband, or any of his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed three hundred dollars.''

Section 2 of that act provided that in case of the death of the wife before the decease of her husband the amount of the insurance might be made payable after her death to her children.

This statute of 1840 was thereafter amended from time to time in unimportant particulars so far as the questions here involved are concerned, save that the amount of exemption was increased to $500 and made dependent upon premiums paid out of the property of the husband. Thus the statute continued until 1896, when it was substantially re-enacted in section 52 of the Domestic Relations Law.

It is plain that said statute was passed for a most beneficent object. Its purpose and intent was to provide support for the wife in case of possible widowhood and to put it beyond the power of either husband or wife to take away the same. The husband was not permitted to interfere with provisions he had thus created as his wife possessed a vested interest in the

policy that he was powerless to destroy. *Whitehead* v. *New York Life Ins. Co.,* 102 N. Y. 144, 152, 153.

And all assignments by the wife of her interest in such policies were declared by the courts to be invalid and void. *Eadie v. Slimmon,* 26 N. Y. 9, 15, 17; *Barry* v. *Equitable Life Assur. Soc.,* 59 id. 587, 592, 593; *Brummer* v. *Cohn,* 86 id. 11; *Smillie* v. *Quinn,* 90 id. 496, 497; *Baron* v. *Brummer,* 100 id. 372; *Miller* v. *Campbell,* 140 id. 457.

It was also held that it was not necessary to refer to the statute in the policy in order to bring the case within its protection as from the beneficial nature of the contract it would be presumed to have been made with reference to the act. *Brummer* v. *Cohn,* 86 N. Y. 11, 14–16; *Dannhauser* v. *Wallenstein,* 52 App. Div. 315; *Brick* v. *Campbell,* 122 N. Y. 338.

The non-assignable character of a wife's insurance upon the life of her husband continued until the enactment of chapter 821, Laws of 1873, which authorized a married woman, in case she had no children, to dispose of the policy by deed or will, and the further statute of 1879, chapter 248, which made all policies issued upon the lives of husbands for the use and benefit of their wives assignable with the written consent of their husbands. The substance of these statutes is now incorporated in section 52 of the Domestic Relations Law.

It will be observed that when the first policy was issued the statute of 1840 was in force, while the last policy was issued under the Domestic Relations Law, and the important question now arises whether the rights of the parties are to be determined by the provisions of those statutes. So far as the first policy is concerned there would seem to be no reasonable doubt upon the subject. It was issued upon the application made out in the name of the wife and, therefore, in

procuring such insurance the husband acted as the agent of his wife and the case is brought directly within the provisions of the act of 1840. *Whitehead* v. *New York Life Ins. Co.,* 102 N. Y. 143; *Bradshaw* v. *Mutual Life Ins. Co.,* 205 id. 467.

The second policy, however, involves other considerations. This policy was procured by the husband upon his own application and was made payable to his wife. The question thus presented is whether section 52 of the Domestic Relations Law includes within its terms policies of insurance which were negotiated by the husband and made payable to the wife as well as insurance which she herself placed upon the life of her husband. As to this it seems to me there can be but one answer. The statute, as we have seen, was passed for a most beneficial purpose and in order to give full effect to the manifest intention it is just as essential to have it apply to policies negotiated by the husband as to those procured by the wife. It was said by Lord Bacon many years ago that a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter and a thing within the letter of the statute is not within the statute unless it be within the intention of the makers. Bacon's Abr. Tit. "Statute," §§ 5, 10; *People* v. *Utica Ins. Co.,* 15 Johns. 381; *Holmes* v. *Carley,* 31 N. Y. 289, 290.

It is further said that the controlling consideration is the intention of the legislature which is to be ascertained from the cause or necessity which led to the enactment of the statute. A strict and literal interpretation is not always to be adhered to and where the case is brought within the intention of the law makers it is within the statute although by a technical interpretation it is not within its letter. *People* v. *Lacombe,* 99 N. Y. 43, 49; *Spencer* v. *Myers,* 150 id. 269, 275.

The latter case is an instructive authority upon the judicial construction of statutes. In that case the legislature had enacted that all policies issued " within the state of New York " upon the lives of husbands for the benefit of their wives should be assignable and it was held that policies issued " without the state " were within the meaning and intention of the statute and were, therefore, included in the same.

Furthermore, as the section above referred to from the Domestic Relations Law is a substantial re-enactment of the act of 1840, the decisions under that statute will be found most useful in its construction. It has been repeatedly held by our courts that the act of 1840 applied to policies negotiated by the husband and made payable to the wife. In other words it is held that when it appears that the insurance was intended by the husband as a protection to the wife the case is brought within the equity of the statute and the rights of the parties are to be determined by its provisions.

Thus in *Wilson v. Lawrence,* 13 Hun, 238, 241, where a policy was taken out by the husband payable to his wife it was held that it was apparent that the husband designed it as a provision for the support of his wife during widowhood and, therefore, it was within the equity and controlled by the act of 1840. The case was affirmed by the Court of Appeals in 76 N. Y. 585.

The same doctrine was held in *Dannhauser* v. *Wallenstein,* 52 App. Div. 312, 315. This case was reversed by the Court of Appeals, but upon another point, there being no dissent as to the doctrine above enunciated.

In *Smillie* v. *Quinn,* 90 N. Y. 492, 496, the policy was taken out upon the application of the husband and made payable to the wife and it was conceded that the case was governed by the act of 1840.

In *Barry* v. *Equitable Life Assur. Soc.,* 59 N. Y. 585,

the policy was taken out by the husband in the name of his wife and it was held that the rights of the wife were to be determined by the act of 1840.

This case was followed by *Brummer* v. *Cohn,* 86 N. Y. 11, where the same doctrine was reaffirmed, and finally in *Guardian Trust Co.* v. *Straus,* 139 App. Div. 834; affd. 201 N. Y. 546, it was expressly held that the statute of 1840 applied to the policies negotiated by the husband and made payable to the wife.

Nor do I think that the recent decision of the Court of Appeals in the case of *Bradshaw* v. *Mutual Life Ins. Co.,* 187 N. Y. 347, establishes any contrary doctrine. In order to understand the *Bradshaw* decision we must have in mind the facts there before the court and the question that was up for decision. The controversy there arose over the power of the wife to dispose of the policy by will. The act of 1840 contained no provisions whatever upon that subject and the same was added by amendment in 1873 (chap. 821). The court, therefore, was not called upon to construe the act of 1840, but only the added amendment of 1873. The facts were that the husband had taken out a policy of insurance payable to his wife, if living, and if not living to their children. The husband paid all the premiums and they never had any children. The wife died before her husband, leaving a will by which she bequeathed away all her property. After her death, upon the application of the husband, the company made the policy payable to his estate. It was held by the Court of Appeals that the policy, having been taken out by the husband and he having paid all the premiums and the policy on its face being payable to her if she survived her husband, otherwise to her children, and there being no children to take in the event of her decease, the title of the wife was conditioned upon her surviving the husband and, therefore, when she pre-

deceased him all her interest in the policy was terminated and the right to dispose of the same by will did not exist. That under such circumstances the husband could not have intended the insurance should become part of her estate instead of his own. It was further held that the provisions of the amendatory act of 1873, authorizing a married woman to dispose of such a policy by will, only applied to insurance she had herself placed on the life of her husband. In other words, that the statute did not cover a case where the husband had himself taken out the insurance and paid all the premiums and where, as the wife had predeceased her husband, there was no longer any necessity for the protection that the insurance was intended to furnish. There is nothing whatever in this case at all in conflict with the authorities above cited. On the contrary, the court concedes that it was a valid contract of insurance as long as the wife lived and that if the husband had died during her lifetime she could have collected the amount of the policy. The policies were, therefore, within the protection of the act of 1840 and section 52 of the Domestic Relations Law. Upon the wife surviving her husband she would be entitled to receive the insurance money free from any claims of the creditors or personal representatives of the husband. This right of the wife was a vested interest of which she could not be deprived.

It seems to me, therefore, entirely clear that so far as the first policy is concerned the wife possessed a vested interest in the same. That it was subject to be defeated by her death during the life of her husband made her interest no less of a vested nature. It was at most a mere conditional limitation upon her interest and until that condition arose her interest continued in the policy. *Bradshaw* v. *Mutual Life Ins. Co.,* 187 N. Y. 354, 355.

That she possessed a vested interest of which she could not be deprived, save in the manner provided in the policy, I think is in accord with all the authorities. *Ruppert* v. *Union Mutual Ins. Co.,* 7 Robt. 155; *Ferdon* v. *Canfield,* 39 Hun, 572; *Stilwell* v. *Mutual Life Ins. Co.,* 72 N. Y. 386; *Whitehead* v. *New York Life Ins. Co.,* 102 id. 151; *Garner* v. *Germania Life Ins. Co.,* 110 id. 267; *United States Trust Co.* v. *Mutual Ben. Life Ins. Co.,* 115 id. 152, 157; *Schneider* v. *United States Life Ins. Co.,* 123 id. 109, 113; *Walsh* v. *Mutual Life Ins. Co.,* 133 id. 408; *Holmes* v. *Gilman,* 138 id. 382; *Fidelity Trust Co.* v. *Marshall,* 178 id. 468, 473; *Geoffrey* v. *Gilbert,* 5 App. Div. 98, 101; affd. on opinion below, 154 N. Y. 741; *Sterritt* v. *Manhattan Life Ins. Co.,* 38 App. Div. 602; *Washington Central Bank* v. *Hume,* 128 U. S. 195, 206.

Nor was the interest of the wife in any manner affected by the option to be exercised at the expiration of the tontine dividend period. The parties agreed that the tontine surplus should be withdrawn and the policy continued as a participating and full paid-up policy. This was done prior to the husband's bankruptcy so that at that time the option which the policy gave the husband was no longer a factor in the case. *Anderson* v. *Goldsmidt,* 103 N. Y. 618.

It is, however, urged by the counsel for the defendant trustee that as to the second policy the husband reserved the right to change the beneficiary and hence the wife never had any vested interest in the same.

It has been held in the case of co-operative associations that the beneficiary had no vested interest in the insurance where the member possessed an option to change the beneficiary at his pleasure without the consent of the beneficiary named in the policy. The right to make such change is provided for in the Insurance Law, and hence the insurance benefit is regarded as

attached to the membership and not to the beneficiary named. Therefore the right of the payee has no other foundation than the bare intent of the member revocable at any moment. 2 Consd. Laws, 2660 (Ins. Law, art. 6, § 211) ; *Steinhausen* v. *Preferred Mut. Accident Assn.,* 59 Hun, 336, 339 ; *Smith* v. *National Benefit Soc.,* 123 N. Y. 85, 88.

In other words the right of indemnity does not rest upon contract but is a mere feature of the membership and cannot be disconnected therefrom. The certificate is not a chose in action like an ordinary policy of life insurance in which a right of property may vest and the only right of the member is to exercise a power of appointment over the same. *Sabin* v. *Grand Lodge,* 6 N. Y. St. Repr. 152, 156, 157 ; *Hellenberg* v. *Order B'nai Berith,* 94 N. Y. 580.

But even in the case of co-operative insurance, where the membership was taken out under a contract that the indemnity should be paid to a certain party, such beneficiary has a vested right in the same. *Smith* v. *National Benefit Soc.,* 123 N. Y. 85, 88.

The case here presented is entirely unlike that of co-operative insurance to which the above rule pertains. The policy of insurance in this case is not a membership benefit but a contract obligation. *Washington Central Bank* v. *Hume,* 128 U. S. 205.

It was procured by the husband as a protection to his wife and family in case of his possible death and by the terms of the statute the wife is entitled to receive the amount of insurance upon the death of her husband free from all claims of creditors.

Granted that by the policy the husband has the right to change the beneficiary without consent of the wife, this means nothing more than a right upon his part to terminate the security he had provided for his wife and family. If he dies in the meantime, before making

such change, the wife is entitled to the amount of the policy. *Sangunitto* v. *Goldey*, 88 App. Div. 79.

How then can it be said that the wife possesses no vested interest in the policy when she has a right to collect the insurance money in case her husband dies? She possessed either a vested interest in the policy or she had merely an expectancy or inchoate right and how can it be claimed that the mere right to terminate a contract operates to make its obligations a mere expectancy only? It is quite true that her rights may be terminated by the action of her husband but that does not in my judgment create any expectancy or make her interest in the policy a mere contingency. Her contract rights are vested and complete and the power of the husband to terminate the same by a change of beneficiary is a mere conditional limitation which, when exercised, terminates her rights but does not make her interest in the policy any the less of a vested nature. 40 Cyc. 1643, 1663.

The counsel for the trustee in bankruptcy, however, strenuously urge that the power of the insured to change the beneficiary operates to deprive the wife of all of her interest in the policy and they press upon my attention several decisions of the United States courts made in bankruptcy cases, which they claim establish the above proposition. A complete analysis of these decisions would serve no useful purpose at this time. It is sufficient to say that they all proceed upon the theory that the policy gave the insured certain reserved rights that he could avail himself of without consent of the beneficiary, and, therefore, those rights were property interests in the bankrupt that passed to his trustee. It is only to the extent that the utilization of these rights operates to destroy the interest of the wife in the policy that the doctrine asserted has any support in the cases. Thus in the *White Case,* 174

42

Fed. Repr. 333, the policy reserved the right in the insured to surrender it at any time and take paid-up insurance or other value therefor. The *Hettling Case,* 175 Fed. Repr. 65, and the *Draper* Mss. opinion by Judge Ray are also to like effect. The further significant fact appears that in none of those policies did it appear that the policies were intended for the protection of the wife and were taken out under an agreement to that effect.

It may also be said that the assertion in the *White* case that the protection afforded the wife by section 52 of the Domestic Relations Law only extended to policies which she could dispose of by will or herself assign is not in accordance with the decisions in this state. The following cases are also to like effect: *Matter of Herr,* 25 Am. Bank. Rep. 142; *Matter of Dolan,* 25 id. 145; *Matter of Oreor,* 24 id. 343; *Matter of Diack,* 100 Fed. Repr. 770; *Matter of Boardman,* 103 id. 783; *Matter of Becker,* 106 id. 54; *Matter of Welling,* 113 id. 189. See also *Jacobs* v. *Strumwasser,* 84 Misc. Rep. 28.

The converse of the rule above stated is also held, and that is, unless the policy is payable to the insured or it has a surrender value payable by the terms of the policy to him alone, he has no interest that passes to the trustee. *Matter of Buelow,* 98 Fed. Repr. 87; *Matter of McDonnell,* 101 id. 239.

A policy that does not assure to the bankrupt some actual value as an asset does not pass to the trustee. *Gould* v. *New York Life Ins. Co.,* 132 Fed. Repr. 927; *Clark* v. *Equitable Life Assur. Soc.,* 143 id. 175.

An examination of the policy in question will show that it does not contain any of the provisions essential to bring the case within the rules laid down by the United States court. It was taken out for the especial benefit of the wife under an agreement that it should be

held for her protection. It is not an endowment but a limited payment straight life policy. There is no proof of the custom of the company as to allowing a cash surrender or paid-up value, and the only provision in the policy in relation to a cash surrender value is where after five years' payment or more the company will, upon request of insured, with a full and valid surrender of the policy and of all claims thereunder, pay a cash surrender value, as indicated in the table. The policy does not say that this shall be paid to or belong to the insured or that it may be done without the consent of the beneficiary. On the contrary it is manifest that such consent is necessary, as before the payment is made the policy and all claims thereunder must be surrendered to the company. A surrender under such circumstances by the assured without the consent of the beneficiary would be invalid and void. *Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 144; *Garner* v. *Germania Life Ins. Co.*, 110 id. 267; *Schneider* v. *United States Life Ins. Co.*, 123 id. 109, 113.

The most that can be claimed is that the insured had the right to terminate the wife's insurance by making a change of beneficiaries. Assuming that he had the right to make himself a beneficiary, that would not give him any present interest in the policy which would pass to the trustee, as the policy would not mature during his lifetime, and hence there was nothing for the trustee to receive. *Matter of Buelow,* 98 Fed. Repr. 87; *Matter of McDonnell,* 101 id. 239; *Matter of Welling,* 113 id. 189, 191; *Matter of Pfaffinger,* 21 Am. Bank. Rep. 255.

It is plain that the bankrupt could not himself have surrendered the policy and received its cash surrender value, and under section 70a of the Bankrupt Law the trustee is only vested with powers the bankrupt might

have exercised for his own benefit, not with those he might have exercised for other people. A trustee in bankruptcy has no greater rights than those possessed by the bankrupt. *Matter of Chase,* 124 Fed. Repr. 753, 755.

I also think the rights of the plaintiff in the policies in question may be sustained upon the theory of an executed gift of the same. The proofs show that they were procured by the husband for the benefit of his wife and family, and were delivered by him to her for that purpose. She has since had possession of the same, either by herself personally or through her husband, whose possession was that of the wife. Under these circumstances the wife acquired an interest in the policies independent of the statute of which her husband could not deprive her without her consent. *Fowler* v. *Butterly,* 78 N. Y. 68; *McGlynn* v. *Curry,* 82 App. Div. 431.

My conclusions, therefore, are that no rights in the policies in question passed to the trustee in bankruptcy and that the plaintiff possesses certain vested rights in the same which the courts will protect and enforce. The plaintiff is, therefore, entitled to a decree adjudging her interest in said policies as above set forth and restraining the trustee in bankruptcy of her husband from disposing of the same or collecting the surrender value thereof, together with costs, to be paid out of the bankrupt's estate.

Judgment for plaintiff.