In the Matter of the Judicial Settlement of the Accounts of MARINE TRUST COMPANY OF BUFFALO and Others, Executors of the Last Will and Testament of EDMUND HAYES, Deceased.

Surrogate's Court, Erie County, April 6, 1928.

**Executors and administrators — claims against estate — decedent and his wife joined in assignments of policies of life insurance as collateral security for loans made by insurer — policies were payable to decedent's wife and her administrator seeks to hold decedent's estate on theory that moneys which were deducted by insurance company from proceeds of policies belonged to wife as beneficiary thereof — loans created no enforcible debt against decedent or his estate — relation of debtor and creditor did not arise under loan agreements — claim disallowed.**

On this proceeding for the settlement of accounts of decedent's estate, it appears that decedent and his wife joined in the assignments of five policies of life insurance as collateral security for loans made by the insurer. The policies

were payable to decedent's wife and her administrator seeks to hold decedent's estate liable on the theory that the moneys which were deducted by the insurance company from the proceeds of the policies and apportioned by it to liquidate the indebtedness on the loans, were moneys which belonged to decedent's wife as beneficiary under the policies.

Since decedent reserved no right to change the beneficiary, the rights of his wife could not be defeated or impaired except by her own act, but having signed the loan agreements and assignments she must be held to have assented to the substitution of the company as beneficiary of the policies in her place to the extent of its interest therein.

The loans, therefore, created no enforcible debt against decedent or his estate and upon his death the amount which the beneficiary was entitled to receive on the policies was the net sum due thereon, and since she has received that sum no part of her property was ever applied to the payment of the loans, so the claim must be disallowed.

The fact that the loan agreements were made voluntarily and not under compulsion of the statute (Ins. Law, § 101, subd. 7) does not change their essential character and the relation of debtor and creditor did not arise under the loan agreements as between the insured and the insurer.

PROCEEDING for settlement of accounts of executors, involving validity of claim against the estate.

*Kennefick, Cooke, Mitchell & Bass* [*James McC. Mitchell* of counsel], for the executors.

*Moot, Sprague, Brownell & Marcy* [*Helen Z. M. Rogers* and *W. L. Marcy* of counsel], for Dartmouth College.

*Penney, Persons, Blair & Nye* [*Charles F. Blair* of counsel], for estate of Mary H. Hayes.

*Slee, O'Brian & Hellings* [*J. L. O'Brian* of counsel], for University of Buffalo.

HART, S. Edmund Hayes died on the 19th day of October, 1923, and his wife, Mary H. Hayes, died on the 16th day of November, 1924. The administrator of the estate of Mary H. Hayes has filed against the estate of Edmund Hayes a claim for the sum of $33,824.39, and the validity of the same is now before this court for determination.

The claim arose out of the deduction by the Equitable Life Assurance Society of the United States of the said sum from the gross proceeds of five life insurance policies on the life of Edmund Hayes, aggregating $66,283.41, which deduction was made on the 5th day of January, 1924. The deduction was made to retire the principal of certain loans made by the society to Edmund Hayes in December, 1907, as collateral security for which the said five insurance policies were assigned by Edmund Hayes and Mary E. Hayes, his wife, to the insurance company. After deducting the

said sum of $33,824.39, the Equitable Society remitted the balance due on the said policies to the committee of the property of Mary H. Hayes, she at that time being incompetent.

All five of the policies were payable to " Mary H. Hayes, if living, if not then to her husband Edmund Hayes, his executors, administrators and assigns."

Four of the policies were of the so-called " Semi-Tontine " type, three of them on the twenty-payment life plan and one of them on the fifteen-payment life plan. Upon completion of the tontine dividend period of the said three twenty-year payment policies on April 26, 1906, the insured withdrew in cash the shares of the accumulated surplus apportioned to the same amounting in each case to $2,687.20, and continued each policy in force on the ordinary plan for the sum of $10,000 in each case.

Upon the completion of the tontine dividend period of the fifteen-year policy on April 26, 1901, the insured converted the policy into a paid-up policy for $26,000.

The fifth policy, which was originally for the sum of $50,000, was converted into a paid-up policy for $10,000.

In the month of December, 1907, Edmund Hayes applied to the Equitable Society for a loan. Under date of December 6, 1907, the society notified him of the amounts which would be loaned " upon obtaining a satisfactory transfer " of these policies, and stated, " upon return of the enclosed loan agreement duly executed by the assured and the beneficiaries, this matter will have prompt attention."

Thereafter Mr. and Mrs. Hayes both joined in assignments of the five policies as collateral security for the loans offered, which assignments provided as follows, the date, policy number and amount of loan being left blank:

" The party of the first part agrees to loan and does hereby loan to the parties of the second part, the sum of $      , the receipt of which by the parties of the second part, is hereby acknowledged; and the said parties of the second part agree to repay the same to the said party of the first part, at its office 120 Broadway, New York City, on the       day of December, 1908.

" In consideration of said loan, the parties of the second part hereby assign, transfer and set over all their right, title and interest, including the right to exercise any and all options and privileges, in policy No.      on the life of Edmund Hayes issued by said party of the first part, together with all money which may be payable under the same to said party of the first part as collateral security for the repayment of said loan.

" In the event of default in the repayment of said loan upon

the date hereinabove mentioned, the party of the first part is hereby fully authorized and empowered, without notice to and without demand for payment by the parties of the second part, to cancel said policy and to apply the cash surrender value of such cancellation to the payment of said loan and any unpaid interest; and upon the maturity of said policy, either by death or lapse of time, the party of the first part is hereby authorized and empowered to exercise any right or option and accept and extend any privilege or other benefit held, possessed or enjoyed by the parties of the second part, or any of them, under the terms and conditions of said policy, including the right to commute any amount due in installments whether provided for in the policy contract or not. Should the surrender value of said policy exceed the amount of above loan with interest at 5% thereon, then, and in that case, the excess value above the loan and interest shall be due and payable to the legal owner or owners of the policy on demand."

These assignments were executed by Edmund Hayes and Mary H. Hayes.

The Equitable Society acknowledged receipt of the above assignments in the following form, the number of policy, amount of loan, and date of maturity being again left blank:

" We acknowledge that policy No. on the life of Edmund Hayes has been placed with the Society as security for a loan of $ subject to the conditions of the Society's loan agreement, duly executed by the applicants for such loan. This loan will become due and upon repayment of same said policy will be returned.

" In the event of the death of the insured before the maturity of the loan, any indebtedness to the Society by reason hereof will be deducted from the amount payable under the policy, the balance being payable to the person or persons legally entitled thereto, in accordance with the terms of the policy.

" In the event of the cancellation of the policy owing to default in the repayment of the loan when due, the excess value thereof above the amount of the loan and interest shall be paid on demand to the person or persons legally entitled thereto, should its surrender value exceed the amount of the loan with interest thereon to date of settlement at 5%."

The checks in payment of the loans were made payable to the order of Edmund Hayes and Mary H. Hayes. The amount of the loan in each case was almost exactly the amount of the cash value of the policy on the date of the loan. Thus, on each of three semi-tontine policies, the cash value was $5,518.10, and the loan was $5,515; on one of the paid-up policies the cash value was

$12,992.61, and the loan was $12,990; on the other paid-up policy the cash value was $4,590, and the loan was $4,590.

The entire proceeds of the loans were used by Edmund Hayes and no part of the same was received or enjoyed by his wife. The time for payment of principal was extended from year to year until the death of Edmund Hayes upon payment by him of the annual interest and of the annual premiums upon the policies.

The claimant seeks to hold the decedent's estate liable on the theory that the moneys which were deducted by the insurance company from the proceeds of the policies and apportioned by it to liquidate the indebtedness on the loans, were moneys which belonged to Mary H. Hayes as beneficiary under the policies; and that this resulted in her money being used to pay a debt owing by the decedent's estate.

The policies reserved no right on the part of the insured to change the beneficiary. Although they were negotiated by Edmund Hayes, they were made payable to his wife, and are within the protection and subject to the provisions of section 52 of the Domestic Relations Law. (*Grems* v. *Traver*, 87 Misc. 644; affd., 164 App. Div. 968; *Wilson* v. *Lawrence*, 13 Hun, 238; affd., 76 N. Y. 585; *Barry* v. *Equitable Life Assurance Society*, 59 id. 587; *Brummer* v. *Cohn*, 86 id. 11; *Guardian Trust Co.* v. *Straus*, 139 App. Div. 884; affd., 201 N. Y. 546.)

It follows, therefore, that Mary H. Hayes had a vested interest in the policies, subject only to be defeated by her death before her husband. According to the express provisions of section 52 of the Domestic Relations Law, she became entitled upon the death of her husband to receive the insurance money as her separate property and free from claims of creditors or representatives of her husband.

Prior to the negotiating of the loans in December, 1907, Mr. and Mrs. Hayes were the sole owners of the policies. They had the entire legal and equitable interest therein. Acting together, they could dispose of them as they pleased without contravening any statute or any stipulation in the policies. By said section 52 the policies were assignable, and could be surrendered to the insurance company by Mrs. Hayes, with the written consent of her husband.

Having complete control, ownership and dominion of the policies, Mr. and Mrs. Hayes negotiated the loans in question in December, 1907, and assigned the policies as sole security therefor. Each signed the loan agreements, and the checks representing the loans were made payable to each. The loan agreements provided a certain date for repayment, but also stipulated the specific method by

which payment of the notes was to be enforced in case of default, or death of the insured.

It was said in *Faris* v. *Faris* (76 Ind. App. 336): " Here is a specific method of payment provided, an exclusive primary fund created, out of which payment is to be made, which fund is held in hand. It cannot reasonably be contended that the company could have ignored its contract, paid the full amount of the policy to appellant, and then have filed its notes as claims against the estate. As against other creditors and the heirs, it was bound to apply the fund in its hands as it had by its contract agreed to do. With this primary fund for its protection, out of which it had agreed to collect the debt, it had no rights, in lieu thereof, against the general personal estate. Such being the case, there were no rights to which appellant could be subrogated."

The question at issue was decided adversely to the claimant in *Wagner* v. *Thieriot* (203 App. Div. 757; affd., 236 N. Y. 588). In that case the wife was the beneficiary named in two policies of insurance upon which separate loans were negotiated by the insured, her husband. In one of the said loan transactions the insured agreed to repay the loan to the company at its home office in the city of New York, upon demand. In the other transaction there was no agreement on the part of the insured to repay the loan. The court said (p. 762): " The law is well settled that where, as in the case at bar, insurance policies are made payable to the decedent's widow neither the policies nor the proceeds thereof form any part of the decedent's estate. (Dom. Rel. Law, § 52; *Grems* v. *Traver*, 87 Misc. Rep. 644; *Kittel* v. *Domeyer*, 175 N. Y. 205; *Matter of Thompson*, 184 id. 36.) The proceeds cannot be reached by creditors except as provided in section 52 of the Domestic Relations Law (not pertinent here) and the executor or administrator is not entitled to any commissions in collecting the same. Such being the case, it is contrary to reason and justice to hold, where loans have been made on insurance policies payable to named beneficiaries, that the amount due upon such loans can be extracted from the general estate and taken out of the pockets of general creditors, next of kin and legatees, for the benefit of such beneficiary."

The claimant seeks to distinguish this case on three grounds, and these will now be considered:

1. The claimant says that in the case at bar the policies were issued and the loans made prior to the passage of section 101, subdivision 7, of the Insurance Law (added by Laws of 1909, chap. 301, as amd. by Laws of 1923, chap. 28); and that they accordingly contain no compulsory provision requiring the company to

make loans on assignment of the policies and on the sole security thereof.

Section 101, subdivision 7, of the Insurance Law provides in substance that after three full years' premiums have been paid, the company, at any time while the policy is in force, must advance to the insured, on proper assignment of the policy and on the sole security thereof, a sum equal to, or at the option of the policy owner, less than the cash value thereof.

It is true that in the case at bar the company was not compelled, either by the said statute or by any condition in the policies, to make the loans in question. But, as I have above pointed out, the parties were free to make any contract they pleased. And they voluntarily entered into a loan agreement of the kind and character contemplated by the subsequently enacted statute. The fact that the agreement was made voluntarily and not under compulsion of the statute, does not change its essential character. If, as was held in *Wagner* v. *Thieriot* (*supra*), the true relation of debtor and creditor did not exist in that case owing to the peculiar nature of the contract of insurance and the relation of the parties growing out of the same, it must be no less true that the relation did not arise in the case at bar under the loan agreements voluntarily entered into.

2. The claimant urges that whereas in the *Wagner* case the policies reserved to the insured the right to change the beneficiary without her consent, no such right was reserved to the insured in the case at bar.

Inasmuch as Edmund Hayes had reserved no right to change the beneficiary, the rights of his wife could not be defeated, lessened or impaired except by her own act. But she signed the loan agreements and assignments, and thereby must be held to have assented to the substitution of the company as beneficiary of the policies in her place and stead, to the extent of its interest therein.

3. Finally, the claimant says that the loan agreements in the case at bar provided that " the parties of the second part agree to repay the same to the said party of the first part " on a stated day. Claimant accordingly urges that if upon the death of the insured there had been a deficit after applying the proceeds of the policies upon the loan, the insurer would have had a right to file and enforce a claim against the estate of the insured for the amount of such deficit.

The parties to the loan agreement not only did not provide for the collection of any part of the loans in the manner suggested, but apparently had no intention of enforcing collection in such a way. In the case of each individual loan the advancement was

of a sum not greater than the cash surrender value of the policy at the time the loan was made. It is difficult to see, therefore, how there could be a deficit after applying the proceeds of the policies on the loan, or how an intention can be spelled out of the loan agreement to enforce payment by resorting to assets other than the policies themselves. The intent was evident to keep the loans within the value of the policies, which were the only securities out of which they were payable by the agreement of the parties.

I think it clear, therefore, that the relation of debtor and creditor did not arise as between the insured and the insurer on account of the loan agreement. The loans created no debt enforcible against Edmund Hayes or his estate. Upon his death the amount which the beneficiary was entitled to receive on the policies was the net sum due thereon. As she has received that sum, no part of her property was ever applied to the payment of the loans.

It follows, therefore, that the claim herein must be disallowed. Decree may enter.