STEPHEN CAPLIN, Appellant, v. THE PENN MUTUAL LIFE INSURANCE COMPANY and Others, Respondents.

Second Department, March 15, 1918.

**Insurance — right of assignee of life insurance policy to borrow thereon from insurer.**

Provisions of policies of life insurance examined, and *held*, that the words " insured or owner of the policy," as used in the section of the contract relating to the borrowing of money thereon, authorize the assignee of all values and rights of the assured to borrow money from the insurer on the policies to the amount stipulated therein. Such words do not refer to the beneficiaries who are expressly prohibited from borrowing " at any time."

PUTNAM, J., and JENKS, P. J., dissented, with opinion.

APPEAL by the plaintiff, Stephen Caplin, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 31st day of July, 1917, dismissing the complaint upon the decision of the court after a trial at the Kings County Special Term.

*Adolph Feldblum,* for the appellant.

*George Roberts* [*Albert W. Putnam* with him on the brief], for the respondent Penn Mutual Life Insurance Company.

*Aaron William Levy,* guardian *ad litem,* for the respondents Stella Caplin and May Caplin.

THOMAS, J.:

The defendant company insured the life of Henry Caplin by two policies, one for $40,000, and one for $20,000. The assured assigned the policies to the plaintiff so as to carry to the assignee all values and rights that the assured had. The plaintiff would borrow from the insurer money on the policies to the amount stipulated in the contracts of insurance. The only question is whether the policies authorize it. I conclude that they do so in plain and unmistakable terms. The contracts present features of measured control of the policies by assured or owner during the life of the assured,

and of contingent interests in named or uncertain persons in the sums for which the policies shall be a claim after the death of the assured. The pronounced declaration of the policies is that the beneficiaries shall not borrow money on them. The words of exclusion are so distinct that it is sufficient to quote them: " It is further agreed that the beneficiaries under this policy shall not at any time have the right to demand or receive in lieu of the income or principal sum hereunder payable, the commuted value of the same nor to borrow from the Company on the security thereof, nor in any wise to anticipate or alienate the benefits payable hereunder." The provision that the beneficiaries shall not even receive the commuted value is very significant, as will later appear. Indeed, without the excluding provision the beneficiaries could not borrow on the policy, because before the assured's death and, may be, for a time thereafter, it could not be known who are or will be the beneficiaries. To illustrate, in one policy it is provided that a niece, Stella, shall enjoy for life, and that her surviving issue shall take the remainder, or in default of her issue the issue of another niece surviving her shall take, subject to a life interest in such second niece, and that if all such takers fail at the maturity of the policies, payment of the proceeds shall be made to the representatives of the assured. So by exact words, as well as by accumulated contingencies, the beneficiaries could not borrow on the policies " at any time," either before or after the death of the assured. And yet it was intended that someone could borrow. Who is he? The language leaves no uncertainty. Whoever is meant may borrow before the assured dies, for the policies provide: " After three full years' premiums have been paid, the Company at any time, while the Policy is in force, will advance, on proper assignment of the Policy and on the sole security thereof, at 5 per cent. interest per annum, in accordance with Section IX hereof, a sum, at the option of the insured or owner of the Policy, equal to or less than the full reserve at the end of the current policy year on the Policy and on any dividend additions thereto according to the American Experience Table of Mortality, with interest at 3 per cent. per annum. There shall be deducted from such loan value any existing indebtedness on the policy and any

unpaid balance of the premium for the current policy year, and interest shall be payable in advance on the loan to the end of the current policy year. Failure to repay any such loan or advance or to pay interest shall not avoid the Policy unless the total indebtedness thereon shall equal or exceed such loan value at the time of such failure nor until one month after notice shall have been mailed by the Company to the last known address of the insured and of the person to whom the loan was made, and of any assignee of record at the Home office of the Company." The defendant argues that the words " owner of the Policy " may refer to the beneficiary. But how can they refer to the beneficiary when by the very words of the policy such indistinct and remote persons may not borrow at any time? Nevertheless, here is an undoubted provision for borrowing and lending money. Notice also that it is to be at the option " of the insured or owner of the policy." Also notice that the beneficiary is not only excluded, but ignored, for in case of forfeiture on account of non-payment of the loan, notice is to be given to the insured and the person to whom the loan was made and any assignee of record. Is it not, then, merely disregard of language to assert that the assured may not borrow, or that the assignee may not borrow, and that the owner of the policy may not borrow, and that such owner can only be a beneficiary, per-chance a life tenant, or perhaps persons unborn? In the 8th paragraph of the policy there is provision for non-forfeiture whereby the company will secure " to the owner thereof a form of insurance." The reference there is to something happening before the policy becomes a claim. Something arises through default in the payment of the premium. The beneficiary does not pay the premium. But whoever owns the policy at the time will determine in what form the " non-forfeiture value shall be secured to the owner of the Policy through one of the following provisions." Then follow three provisions: (1) An extension of the policy for a time indicated by a schedule; (2) the issue of a paid-up policy " upon written application therefor by the owner of the policy and the legal surrender of all claims hereunder to the company at its home office; " (3) payment of the cash surrender value as provided in the policy. It is evident that the indefinable and remote

persons suggested as beneficiaries could do no one of the things resulting in the failure to pay the premiums, and that the words " owner of the policy " could not refer to them. Now mark in this connection that the question is not what persons the new form of the policies may avail. It is said that a paid-up participating policy may only avail the beneficiaries. I think that it is so. That is not the question, but rather what do the words " owner of the policy " mean? These words again appear in paragraph 9 of the policy, where the provision is that " The cash value of any paid-up or extension granted upon the lapse of this policy will be the full reserve at the time of surrender, less any indebtedness to the company under the policy, and will be paid to the owner or owners thereof upon proper release." This is a mere continuance of the subject treated in paragraph 8, subdivision 3, of the policy, and by what ingenuity could the beneficiaries be conjured into activity to make the elections contemplated by paragraph 8 and to receive the payments and to make the release demanded by paragraph 9? The words " owner of the policy " again appear in paragraph 12. There the parties deal with the policy when it becomes a claim, and there is a statement of what may be done at the option of the beneficiary, unless the insured has otherwise directed. But this paragraph has a very instructive provision. It is: " The commuted value of any unpaid installments under Table A, or the commuted value of any unpaid installments — certain under Table B, will be calculated by the company at any time upon the same basis (3% compound interest) as the installments were granted, and will be paid to the owner of the policy, upon request and proper release." Note that the payment is to be made to the " owner of the policy." That cannot be the beneficiaries, for, according to the words already quoted, " the beneficiaries under this policy shall not at any time have the right to demand or receive in lieu of the income or principal sum hereunder payable, the commuted value of the same." Whatever this provision may mean, it cannot refer to the beneficiaries, as they are not allowed to commute either the value or the income of the policy. By paragraph 15 there is another provision for premium loans. Premiums are paid by the assured or owner of the policy and not by

contingent beneficiaries, and yet paragraph 15 provides: " This action of the company is contingent upon the request for such premium loans being filed by the owner of the policy at the home office after the policy has acquired a loan value and while there is no default in the payment of any premium, and such request. is revocable as to any future premium." All that applies to conditions while the assured is alive, and will someone assert that the takers of the life interest, either the one niece or her issue, perchance non-existent beings, or the other niece, the taker of the second contingent life estate, or her remote issue, or, in default of all those, perhaps the representatives of the assured, are, some of them or all of them, to be regarded as the owner of the policy to request premium loans and do whatever else is needful to make available such subdivision 15? The struggle seems to be to so recast the very wording of the policy as to substitute for the identified assured or his assignee, one or more possible life beneficiaries or the vague issue of some of them. It is not worth while to thwart precise language to effect some purpose that may seem to the court benevolent, where the contract does not intend it. The assured was taking $60,000 of insurance, and the annual premiums amounted to a large sum. The assured desired to make the policy available to himself for borrowing purposes and to give to some of his collateral relatives, if they should be alive at his death, or some later time, what might then be a claim against the insurer. He stipulated that the beneficiaries should not be changed. The policy was for the class or classes named, or, in the event of their total non-existence, for the benefit of his estate. The fact that he cannot change the beneficiaries does not require that, what he reserved for himself, should be taken away from him and conferred upon the beneficiaries. What the policy gives them cannot be in any way disturbed. What the policy gives to the assured or the owner of the policy is equally immune from destruction. It has been broached that it is not within the power of the insurer and the assured to enter into a contract whereby there could be reserved this power to borrow, but neither decision nor statute to that effect is called to attention. The policy contemplates in paragraph

that there may be an assignment of the policy, and the assignment is sufficient to carry all the rights which the plaintiff now seeks to enforce. There will be additional findings of fact in accordance with this opinion. All the conclusions of law should be reversed and substituted therefor the conclusion that the plaintiff is entitled to recover the sum named in the complaint, and the judgment should be reversed and the plaintiff have judgment that the defendant make payment in accordance with the findings, with the costs of this action.

MILLS and RICH, JJ., concurred; PUTNAM, J., read for affirmance, with whom JENKS, P. J., concurred, who is also of opinion that the rule stated in *Ferdon* v. *Canfield* (104 N. Y. 143) and *Sterritt* v. *Manhattan Life Ins. Co.* (38 App. Div. 599) applies.

PUTNAM, J. (dissenting):

Borrowing on one's life insurance, arising from business necessities, was not authorized in this State until 1892. (Insurance Law [Gen. Laws, chap. 38; Laws of 1892, chap. 690], § 16, as amd.; now Insurance Law [Consol. Laws, chap. 28; Laws of 1909, chap. 33], § 16, as amd.) Defendant's policy has a printed clause, providing for such advance on " proper assignment of the policy." Obviously such a special clause should be read and construed with the other policy provisions. What is a proper assignment of this policy? Suppose the beneficiary named were a creditor for whom the insurance was taken out. Could the borrowing insured nevertheless incumber that policy to the extent of the premium reserve? Such a right to policy loans must, in fairness to the beneficiary and to the company, depend on the status of the insured and upon the extent of the authority and title left in his hands to pledge through a valid assignment.

The familiar principle is that the interest of a named beneficiary which the insured cannot revoke or change is vested, so that the person procuring the insurance has no power to transfer or incumber that interest. (*Washington Central Bank* v. *Hume*, 128 U. S. 195, 206; *Tyler* v. *Treasurer & Receiver General*, 226 Mass. 306, 309.)

Such a printed option to borrow is obviously attached to the regular policy form, whether it be life or endowment

insurance, and for the frequent case where the loss is payable to one's personal representatives. Can we infer that such an option, on a proper assignment, was meant to overturn and annul the security provided for these infant beneficiaries?

Where the policy expressly gives such borrowing power to the " holder " of the policy (*Travelers' Insurance Co.* v. *Healey*, 25 App. Div. 53), the instability of the fund is apparent, so that the beneficiaries are left to look merely to the residue which the holder's loans have not exhausted. A like power would pass by the clause reserving the right to change the beneficiary without the latter's consent. (*Mutual Benefit Life Ins. Co.* v. *Swett*, 222 Fed. Rep. 200.) But without some wording indicating an unusual right reserved in the insured, his continued premiums work for the benefit of the beneficiary. The insured may let the policy lapse, or otherwise remain passive, but he cannot affirmatively prejudice the trust thereby created either by its surrender or by the less destructive effect of policy loans. To do this, an express clause is required. For instance: " It is understood, that in the event of the surrender of this policy, the beneficiary hereunder shall have no claim whatever upon said company." (*Hilliard* v. *Wisconsin Life Ins. Co.*, 137 Wis. 208, 214.) Or where the contract to pay to the named beneficiaries had this parenthetical clause — " with power to the insured to surrender this policy to said company at any time," the insured had a full right to surrender, which right he could assign. (*Blinn* v. *Dame*, 207 Mass. 159.) But without some *express* provision making the insured's privilege paramount to the security of the beneficiary, his surrender cannot prejudice the vested rights of the beneficiary. (*Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143; *Haskell* v. *Equitable Life Assur. Society*, 181 Mass. 341; *Burke* v. *Prudential Ins. Co. of America*, 221 id. 253; *Timayenis* v. *Union Mut. L. Ins. Co.*, 21 Fed. Rep. 223; *People* v. *Globe Mutual Life Ins. Co.*, 15 Abb. N. C. 75; 96 N. Y. 675.) A late author says of the vested right of such a beneficiary: " This rule applies to a policy to which there are attached the incidents of loan value, cash surrender value and automatic extension by premiums paid so that when sufficient premiums have been paid to produce extended insurance beyond the time of the death of the

insured, the surrender by him of the policy for its surrender value did not impair the rights of the wife beneficiary in the policy." (Bacon Life & Accident Insurance [4th ed.], § 377 [1917].)

There are the further considerations that the power to revoke a trust (which is the effect of sustaining plaintiff's demand for loans) should not be left to uncertain implication. This provision for such loans must mean loans only to those having full right to incumber the fund, and not to the creator of a vested security for dependent infants. In making such policy loans, defendant should have the protection of the unquestioned title of the assignors.

By a reversal with a decree requiring these loans, the court would give its sanction to a *pro tanto* revocation of these trusts, and would, I submit, depart from what has hitherto been the essential basis for the stability of such insurance.

Furthermore, the jurisdiction to decree specific performance does not extend to an agreement to borrow or make a loan of money. (*Conklin* v. *Peoples Building Association*, 41 N. J. Eq. 20; *Larios* v. *Gurety*, L. R. 5 P. C. 346.) True, defendant did not raise this point, but the equity jurisdiction cannot be extended by consent. (*New York Dry Dock Co.* v. *American Life Ins. & Trust Co.*, 11 Paige, 384.)

It may be said that this contract is not the usual agreement to lend money, but a promise to lend upon the proceeds of a contract which thereby plaintiff's assignor was induced to make. Even a promise to lend on a company's own debentures, which was an inducement to take such debentures, cannot be enforced by a decree for specific performance. (*South African Territories, Ltd.*, v. *Wallington*, L. R. [1898] App. Cas. 309.)

Therefore, both on the right and on this attempted remedy, I think the complaint was rightly dismissed.

JENKS, P. J., concurred.

Judgment reversed and judgment directed for the plaintiff, with costs. Findings to be settled on notice in accordance with the opinion.