ETHEL VOROS, Plaintiff, *v.* THERESA BARNA, Defendant.

City Court of New York, Special Term, New York County, May 24, 1935.

*Emil F. Reich* [*Abraham J. Rosenblum* of counsel], for the plaintiff.

*Nicholas H. Pinto,* for the defendant.

NOONAN, J. On or about April 8, 1931, the Metropolitan Life Insurance Company issued its group policy No. 6124 G. L. H., effective March 17, 1931, which insured the lives of the employees of Frederick Page Contracting Company, Inc. John Barna, the deceased husband of the defendant, Theresa Barna, was one of the employees who was insured in this manner. There was issued to him by the insurance company a certificate bearing serial No. 1, certifying that his life was insured under and subject to the terms and conditions of the group policy in the sum of $2,000. The beneficiary designated in the certificate was his wife, Theresa Barna. The group policy contained the following provision: "A. Death Benefit. Upon receipt by the company of due notice and proof — in writing — of the death of any employee, while insured hereunder and upon the surrender of the Certificate and all Certificate Riders — if any — issued hereunder to such employee, the Company shall pay, subject to the terms hereof, to the Beneficiary of Record, the amount of Life Insurance then payable on account of such Employee according to the Formula."

Another provision of the policy declared: "Assignment. The Employee's certificate and Certificate Riders — if any — and the benefits provided hereunder are non-assignable."

With reference to a change of beneficiary the policy provided:

" Section 9. Change of Beneficiary. Any employee insured hereunder may, from time to time, change the Beneficiary by filing written notice thereof with the company accompanied by the Certificate and Certificate Riders, if any, of such Employee. Such change shall take effect upon endorsement thereof by the company on such Certificate and all Certificate Riders, if any, and unless the Certificate and all Certificate Riders, if any, are so endorsed, the change shall not take effect. After such endorsement, the change shall relate back and take effect as of the date the Employee signed said written notice of change, whether or not the Employee be living at the time of such endorsement or not, but without prejudice to the company on account of any payment made by it before receipt of such written notice.

" In the event of the death of any Beneficiary, prior to that of the Employee the interest of such Beneficiary shall vest in the Employee by whom he was designated. If there be no designated Beneficiary at the time when any benefits hereunder shall be payable to the Beneficiary, then such benefits shall be payable as follows: To the wife or husband, if living, of such Employee, if not living, to the children of such Employee who survive such Employee, equally, if none survive, to either the father or the mother of such Employee, or to both equally; if none of the above survive such Employee, to the Estate of such Employee."

The certificate issued under the group policy to John Barna contained the following pertinent provision: " If death occur while the Employee is in the employ of the Employer and while said Group Policy is in force, the amount of Life Insurance, if any, then in force thereunder on said employee, shall be paid to Theresa Barna, Beneficiary."

It further provided: " The benefits herein set forth are non-assignable."

With respect to the right to change the beneficiary the certificate said: " The right to change the Beneficiary is reserved to Employee."

John Barna, the insured, died on September 18, 1934. He had been estranged from his wife and for about eighteen years previous to his death he was living separate and apart from her.

It is uncontroverted that subsequent to his death proper proofs thereof were forwarded to the insurance company. Thereafter, the plaintiff, Ethel Voros, made a claim against the insurance company for the payment of the proceeds of the insurance. The defendant also filed a claim within a short time after the filing of the plaintiff's claim. Under such circumstances the insurance company refused to pay either claimant. Suit was then commenced by the

plaintiff against the insurance company which was followed by similar action on the part of the defendant. Thereupon the insurance company moved for an order of interpleader. As the result of this motion an order was signed on December 31, 1934, directing the Metropolitan Life Insurance Company to pay into court within five days after the entry of the order the proceeds of the policy, with interest, and that upon such payment to the city chamberlain of the city of New York to the credit of both actions the insurance company be stricken out as a party defendant in both actions and be discharged of all liability by reason of the insurance certificate and that the plaintiff, Theresa Barna, be interpleaded and substituted as defendant in the place and stead of the insurance company. The order further provided that the actions by the claimants be consolidated and thereafter proceed under the present title with leave to the plaintiff, Ethel Voros, to serve an amended complaint upon the defendant, Theresa Barna, to which the said defendant had the right to serve an answer.

The insurance company complied with the terms of the order by depositing with the city chamberlain the sum of $2,035, representing the proceeds of the insurance certificate, with interest.

In her amended and supplemental complaint the plaintiff alleges that on or about August 19, 1934, the insured " duly gave, delivered, transferred, assigned and set over unto this plaintiff all his right, title and interest in and to the certificate or policy of insurance specified in paragraph ' Fifth ' hereof, including the sum of $2,000, payable thereunder upon his death," and that by reason thereof " the plaintiff herein became the beneficiary thereunder and entitled to the sum of $2,000."

Defendant moves for summary judgment, and the question is which of the two claimants has the right to recover the proceeds of the insurance certificate.

The answering affidavit of the plaintiff sets forth the following facts: Since July, 1930, the insured boarded and lodged in a rooming and boarding house conducted by the plaintiff. In October, 1931, the insured first became ill and thereafter until his death was seriously sick for the greater part of the time, with only a few months at intervals of that period when he was well enough to return to his employment. Plaintiff claims that for the year 1932 the deceased was indebted to her for board and lodging in the sum of $300. She further states that in the year 1933 she acted as a nurse to the deceased during one of his serious spells of sickness and that he owed her a balance of a board bill and for nursing during that year approximating the sum of $660. In 1934 the insured owed her a balance of almost $800 for room, board and nursing. In

addition to such items the plaintiff claims that in October, 1932, she loaned the deceased the sum of $500, for which he gave her a promissory note due October, 1933, and which was renewed on its due date for another year. A claim is also made for garage rent which the deceased owed for seven months in 1932, for eight months in 1933 and nine months in 1934, making a total of $240. All together the claims of the plaintiff aggregate about $2,400. Plaintiff further states in her answering affidavit that between the latter part of 1933 and August 22, 1934, when the deceased went to the hospital for the last time, he spoke to her on many occasions with reference to his inability to pay her what he owed and assured her not to have any anxiety about the payment as he had a policy of life insurance with the Metropolitan Life Insurance Company for $2,000 which he would give her and which would be transferred in her name. In reliance upon this promise plaintiff says that she continued to nurse the deceased and to give him board and lodging.

On August 19, 1934, just before he left for the hospital, the deceased called the plaintiff to his room and there, in the presence of his friend Frank Ecsedy, he gave her the certificate of the Metropolitan Life Insurance Company, serial No. 1, under Group Policy No. 6124 G. L. H. and said that he wanted the plaintiff to have the $2,000 payable on it when he passed away, that he realized he was very sick and believed he was going to die, that he wanted the plaintiff to have the money represented by the policy in payment of what he owed her although he owed her much more than that and that he would have her name inserted in the policy. He further asked her to look after him as long as he lived, because he had no one else to whom he could go. Plaintiff accepted the certificate and promised to do her very best for him. Plaintiff further says that on August 21, 1934, the deceased told her that he had written to the Metropolitan Life Insurance Company for an application to change the policy over to her. Frank Ecsedy, in whose presence the plaintiff says that the deceased gave her the certificate, also presents an answering affidavit in which he says that he was an intimate friend of the deceased and saw him very often during his illness at which times he was a witness to the care and attention given to him by the plaintiff. He also says that on several occasions the deceased told him that he was desirous of transferring to Mrs. Voros the life insurance policy he had, in payment of the moneys he owed to her for board and lodging and for the loan which she made him. Ecsedy further swears that on August 19, 1934, he visited the deceased in his room and that while there the deceased leaned out of his sick bed and took the certificate of insurance out of the drawer of the dresser and gave it to the plain-

tiff who had been called into the room from downstairs. In giving her the certificate the deceased said, according to Ecsedy, that he wanted her to have it and get the money when he died and that he would have it changed into her name.

Louis Voros, a son of the plaintiff, has submitted an affidavit in which he says that on August 22, 1934, the deceased told him he had written to the insurance company for a form so that he could fill it out and thereby cause his mother to be substituted as a beneficiary. On being later informed by the deceased that the insurance company had failed to send the form he was requested by him to go to the office of the company and obtain the necessary form. He was informed at the office of the Metropolitan Life Insurance Company that he would have to get the required form from the Frederick Page Contracting Company, Inc., the employer of the insured. About a week later two of these forms were obtained from the Frederick Page Contracting Company, Inc. In one of them an official of that company inserted the number of the policy and the name of the beneficiary which was to be substituted. A few days later Louis Voros returned to the hospital with the forms. The insured at that time was gravely ill and unable to sign the form. Voros showed the forms to him and explained what they were. The insured nodded his approval. Voros called at the hospital several times thereafter but the condition of the insured remained unchanged and the form was not signed.

In deciding this motion it must be assumed that the above recited facts are true.

The group insurance under which the insured obtained his certificate is authorized by section 101-b of the Insurance Law (added by Laws of 1918, chap. 192 and amd. by Laws of 1922, chap. 275, and Laws of 1929, chap. 292). Subdivision 2 of section 101-b provides that " the policy and the application or applications submitted in connection therewith shall constitute the entire contract between the parties."

The certificate issued to the insured by the Frederick Page Contracting Company, Inc., complied with the provisions of subdivision 4 of section 101-b which required every policy of group insurance to contain " a provision that the company will issue to the employer for delivery to the employee, whose life is insured under such policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom payable." The beneficiary named in the certificate was the defendant, the wife of the insured. Upon being named as a beneficiary the defendant became vested with certain rights. If she outlived the insured she was entitled to the proceeds of the insur-

ance, provided, of course, the insured did not exercise his power to change the beneficiary in his lifetime.

In *Fink* v. *Fink* (171 N. Y. 616) the court said (at p. 622): " The right of the member to make the change is absolute and the beneficiary can neither prevent it by objecting, nor promote it by consenting. Obviously such a transaction requires some formalities for the protection of the company, the member and the beneficiary. The formalities required by the association before us, through its by-laws, were very simple, but unless they were substantially complied with, the change could not be made. Mere intention to make a change is not enough, for the acts prescribed to carry the intention into effect are forms imposed upon the execution of a power, and they must be observed or the change cannot be effected."

The interest of the beneficiary in the certificate or policy of insurance is a vested one so long as the power to change the beneficiary was not put into execution. (*Fink* v. *Fink, supra;* *Sangunitto* v. *Goldey*, 88 App. Div. 78, 80; *Wagner* v. *Thieriot*, 203 id. 757, 763; affd., 236 N. Y. 588; *Orcutt* v. *Modern Woodmen of America*, 213 App. Div. 530; *Grems* v. *Traver*, 87 Misc. 644; affd., 164 App. Div. 968; *Caplin* v. *Penn. Mutual Life Insurance Co.*, 100 Misc. 374; revd. on other grounds, 182 App. Div. 269; 229 N. Y. 545.)

In *Fink* v. *Fink* (*supra*) the court said (at p. 623): " The question before us is a question of title, for the certificate issued in favor of the wife was valid and binding upon all concerned until a change of beneficiary was lawfully made. The contract creating the power to appoint another beneficiary protects the existing beneficiary until the forms imposed upon the execution of the power have been substantially complied with."

In *Orcutt* v. *Modern Woodmen of America* (*supra*) the court said (at p. 533): " But the contract protects the beneficiary named in the certificate until the requirements imposed for the execution of the power to change the beneficiary have been fully complied with."

It, therefore, seems to be well settled that unless there is at least a substantial compliance with the contract provisions relating to a change of beneficiary, the rights of the existing beneficiary are not affected. (*Schoenholz* v. *New York Life Ins. Co.*, 234 N. Y. 24; *Fink* v. *Fink, supra;* *Thomas* v. *Thomas*, 131 N. Y. 205; *Sangunitto* v. *Goldey, supra;* *Huestis* v. *Prudential Life Ins. Co.*, 127 App. Div. 903; *Orcutt* v. *Modern Woodmen of America, supra;* *Strianese* v. *Metropolitan Life Ins. Co.*, 221 App. Div. 81; *Rothstone* v. *Norton*, 231 id. 59; affd., 256 N. Y. 601; *Canavan* v. *John Hancock Mutual Life Ins. Co.*, 39 Misc. 782; *Newman* v. *John Hancock*

*Mutual Life Ins. Co.*, 45 id. 320; *Seavers* v. *Metropolitan Life Ins. Co.*, 132 id. 719; *Matter of Schiffer*, 135 id. 830; *Matter of Bongiovanni*, 147 id. 830.)

In certain cases the courts have found there was a substantial compliance with the policy provisions as to a change of beneficiary and have allowed the substituted beneficiary to recover the insurance proceeds. (*Luhrs* v. *Luhrs*, 123 N. Y. 367; *Lahey* v. *Lahey*, 174 id. 146; *Donnelly* v. *Burnham*, 86 App. Div. 226; affd., 177 N. Y. 546; *Tidd* v. *McIntyre*, 116 App. Div. 602; *Hall* v. *Prudential Insurance Co.*, 132 Misc. 162; *Matter of Lynch*, 135 id. 436; *Matter of O' Neill*, 143 id. 69; *Baley* v. *Prudential Insurance Co.*, 147 id. 488; *White* v. *White*, 194 N. Y. Supp. 114.)

For example, a provision in the policy that the certificate or policy must be delivered to the insurance company for indorsement before a change of the beneficiary can be effected is one for the benefit of the company, and this provision may be waived by the insurance company, especially where it interpleads the claimants and does not otherwise defend the action. (*Luhrs* v. *Luhrs, supra; Matter of Chatham Phenix National Bank*, 232 App. Div. 598; *Matter of Lynch, supra; White* v. *White, supra; Hall* v. *Prudential Insurance Co., supra; Matter of O' Neill, supra*.)

In those cases, however, the insured had otherwise substantially complied with the contract requirements. Upon the death of the insured the rights of the existing beneficiary become fixed and unalterable. (*Fink* v. *Fink, supra; Schoenholz* v. *New York Life Ins. Co., supra*.)

In *Seavers* v. *Metropolitan Life Insurance Co.* (*supra*) the court said (at p. 722): " The waiver herein by the company after the death of insured removes objection to its liability upon the policy * * * but such legal rights as attached upon the death of the insured remain unchanged. While the rights of the beneficiary are entirely contingent, uncertain and revocable during the life of the insured * * * they became vested upon the death of the insured without change."

With the above principles in mind has the plaintiff shown any proof which requires this court to hold that the insured complied with the contract provisions and succeeded in having her substituted as a beneficiary in place of his wife? In order to complete the change the insured was required to file written notice thereof with the insurance company and at the same time deliver the certificate to the insurer so that the change might be indorsed on the policy.

Nothing like that was done in this case. True the insured attempted to do it but his attempt was incomplete. All that

we have here is a mere intention to make the change, which is not enough. (*Fink* v. *Fink, supra.*)

After the delivery of the certificate to the plaintiff she kept it in her possession, although she had sufficient opportunity before the death of the insured to send it to the insurance company. She herself was partly responsible for the failure to make the attempted change. (*Schoenholz* v. *New York Life Ins. Co., supra.*) It will not do to say that equitable principles should be employed in aid of the plaintiff. Equitable principles are never availed of in the face of a failure to comply with the legal requirements of the insurance contract. (*Matter of O' Neill, supra; Schoenholz* v. *New York Life Ins. Co., supra.*) Nor can the plaintiff rely upon an assignment of the certificate. Not so easily are the rights of the designated beneficiary destroyed. The insured had nothing to give by the transfer of the certificate " because he had no property interest therein, but only a power of appointment." (*Fink* v. *Fink, supra,* at p. 625.) (See, also, *Matter of Pastore,* WINGATE, S., 155 Misc. 247.)

In my opinion, for the reasons stated, the right of the defendant, the widow of the insured and the designated beneficiary, to receive the proceeds of the insurance is superior to that of the plaintiff.

The defendant's motion for summary judgment is, therefore, granted, with appropriate interest and costs. Execution is stayed for ten days after notice of entry of judgment.