E. J. STANFILL, as Trustee and Elfrieda
May, Appellants,

v.

Ralph B. DEFENBACH, as Trustee,
Appellee.

No. 15080.

United States Court of Appeals
Ninth Circuit.

Jan. 4, 1957.

S. Dean Arnold, Clarkston, Wash., C. C. Rowan, Spokane, Wash., for appellants.

Paine, Lowe, Coffin & Herman, Harold W. Coffin, Alan P. O'Kelly, Spokane, Wash., for appellee.

Before DENMAN, Chief Judge, and POPE and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal by Stanfill from a judgment of the District Court for the Eastern District of Washington, Northern Division, for Defenbach in a civil action of interpleader brought by the Sun Life Assurance Corporation of Canada against disputing claimants to life insurance policies issued to one Robert F. Weyen. 28 U.S.C. § 1335. The insurance company deposited in the registry of the court the total sum due on the policies. Jurisdiction is based on diversity of citizenship. The applicable law is that of the State of Washington.

Defenbach contends that this court lacks jurisdiction because no appeal was filed until February 15, 1956. This is because although the judgment was entered December 30, 1955, and the transcript shows no more than that the court on January 19, 1956, denied a motion to amend the findings, conclusions of law and judgment and the motion is not shown to have been made within the ten days of Rule 59(b), Fed.Rules Civ.Proc. 28 U.S.C.A. Hence the contention continues it is not affirmatively shown that the time to appeal was advanced to January 19, 1956.

We regard this contention as reprehensibly frivolous. Defenbach well knew that the motion was served on him on January 5, 1956. He nevertheless put Stanfill to the trouble of invoking Rule 75 and supplying the data by a certified supplemental record from the Clerk of the District Court showing that to be fact, and this court to waste its time in disposing of the contention.

Stanfill contends that the court erred in holding valid a trust of Weyen's life insurance policies to secure his indebtedness against a prior trust of the policies in favor of his children, the terms of which the court construed as giving precedence to the second transaction.

Robert Weyen, then 35 years of age, divorced his wife on September 22, 1953, and agreed to pay $200.00 monthly to her to support their two minor children, Daryl and Carolyn. At the same time he executed a trust in favor of the two children naming Stanfill as Trustee. The period of the trust was 15 years and the res consisted of life insurance policies, eight of which were with Sun Life, of which seven are involved herein. On four of these policies Weyen had borrowed moneys from the insurance company before the Stanfill Trust was executed. At the same time Weyen created the Stanfill Trust he executed a will in which it was stated that because of the trust Weyen made no provision therein for his children, except that, should the policies lapse or become void, they were to get $10,000 under the will. The trust instrument contained a reservation of rights in Weyen concerning the policies later considered.

On November 16, 1954, Weyen created a second trust, this for the benefit of his creditors whose debts were unpaid and immediately collectible, naming one Defenbach as trustee. The trust res included the seven policies of insurance here involved which were transferred to defendant with the power to exercise the policies' loan rights to secure moneys to pay the creditors. Such delivery to Defenbach was made, who thereafter exercised the loan rights on three of the policies.

Weyen was a large scale logging operator, an unstable business requiring large expenditures in which one's continued solvency is necessary. He was a healthy man when he executed the Stanfill trust on September 22, 1953, as shown by his securing a life insurance policy in the following December. He contemplated continuing his business for the

fifteen years of the Stanfill trust but was killed in an accident in April, 1955.

The words of the Defenbach trust are that Weyen "agrees to and does hereby mortgage and pledge to the trustee all his interest and equity in all his assets," which included the policies. The policies provide that:

"Subject to the rights of any assignee of record * * * the contractor may assign or pledge * * * every right * * * conferred by the policy."

The primary question on this appeal is whether the district court erred in holding that the reservation in the Stanfill trust empowered Weyen to assign the trust res to Defenbach for the benefit of creditors, with the power in the assignee (1) to secure loans from the insurance company on the policies and (2) to defeat the interest of the beneficiaries of the Stanfill trust in the death benefits of the policies to the extent of the claims of the creditors secured by the assignment. That reservation reads:

"7. The donor specifically reserves the right, during the term of this trust, [a] to pledge any of such policies as collateral or [b] to exercise the loan rights as provided in said policies, and in the event the donor makes application for such loans, it is hereby expressly understood that the signature of the Trustee named herein shall not be required to join in the application for said loans."

■ Obviously this reservation must be interpreted with reference to both Weyen's and his wife's and children's interest in the maintenance of his credit, and freedom from possible bankruptcy to enable him to continue his monthly payments to them.

■ Stanfill contends first that since before the creation of the trust to him for the benefit of the children, Weyen had exercised the loan rights on four of the policies in the trust, he could not thereafter pledge those policies to Defenbach because under the reservation above

quoted he had reserved the power either to borrow on the policies or to pledge them, but not to do both. We disagree. We think the reservation in the Stanfill trust of the right to borrow on the policies or to pledge them operated prospectively only, and that it cannot be limited by what Weyen did prior to the creation of the trust. If the interpretation urged by Stanfill were adopted, then as to the four policies on which Weyen had exercised the loan rights Weyen reserved no rights at all by the above quoted reservation because he had already elected one of the two mutually exclusive alternatives.

■ We cannot presume that Weyen intended to make such a meaningless reservation when he anticipated a need for the full use of his financial resources in his business, and when it was the obvious purpose of this provision to meet this need. See Massachusetts Mutual Life Insurance Co. v. Bank of California, 1935, 187 Wash. 565, 570, 60 P.2d 675. We conclude that Weyen retained the right to pledge all of the policies under the reservation.

In view of our conclusion that the reservation in the Stanfill trust is applicable only to events occurring after the creation of the trust, it is unnecessary to pass on appellant's contention that Weyen retained only mutually exclusive rights, because subsequent to the creation of the trust Weyen did not exercise any loan privileges on the policies.

■ Stanfill next contends that the phrase "pledge any of such policies as collateral or to exercise the loan rights" limits the pledgee to exercising the loan rights and hence the pledgee lost the right to collect the insurance on Weyen's death when he exercised the loan rights on the remaining policies. There is no merit in this contention. The reservation of loan rights in the above words applies solely to Weyen and not to a pledgee.

Stanfill further contends that a pledgee of a policy of insurance is not entitled to exercise the loan rights at all, but only to collect the amount due on the insured's death. On this he offers no authorities. This is really a matter de minimis since the amount borrowed to that extent reduced Weyen's indebtedness, and thus decreased the amount of the claims of the creditors.

■ We do not agree. Since, as we have found, the reservation in the Stanfill trust in no way limits the rights of the pledgee to enforce the policies, the pledgee was entitled to exercise all rights under the policies to pay the debts secured by the pledge. 2 Appleman, Insurance 779 (1941); 6 Couch, Insurance 5262, 5268 (Cum.Supp.1937). This includes the right to exercise the loan rights on the policies. Couch, Insurance, supra; New York Life Insurance Co. v. Brown, 4 Cir., 1938, 99 F.2d 199; Caplin v. Pennsylvania Mutual Life Ins. Co., 1918, 182 App.Div. 269, 169 N.Y.S. 756, affirmed 1920, 229 N.Y. 545, 129 N.E. 908; Feliciana Bank & Trust Co. v. Union Central Life Insurance Co., 1915, 137 La. 674, 69 So. 91.

■■ An analogous exercise of the power of the pledgee of a policy is the right to surrender it for its cash value.[1] Since a pledgee may exercise the policy right to surrender it for its cash value and thus extinguish it, a fortiori may he exercise the loan right, with the policy remaining existent.

■ As to the death benefits of the policies, the priority of the pledgee, Defenbach, therein to the extent of the debts secured by the pledge, over the interest of the beneficiaries is settled under Washington law. Massachusetts Mutual Life Insurance Co. v. Bank of California, supra.

1. Frad v. Columbian National Life Insurance Co., 2 Cir., 1951, 191 F.2d 22; Conlew, Inc., v. Kaufmann, 1936, 269 N.Y. 481, 199 N.E. 767; see also Bankers Life Co. v. Jacoby, 9 Cir., 1951, 192 F. 2d 1011; 29 Am.Jur. 420; 114 A.L.R. 778.

Elfrieda May, mother of the deceased, and claimant in the court below, appeals from the denial of what she urges is an equitable claim in the amount of $3,000.00 against the insurance proceeds, on the ground that she had advanced this amount to Weyen prior to the assignment to Defenbach. No relevant authority is cited for this claim. It appears that Mrs. May is merely a creditor of the deceased, and has no right in the proceeds of the death payments on the life policies to anyone other than her debtor Weyen.

The judgment is affirmed.