OPINION OF THE COURT
Arthur D. Spatt, J.
In December, 1976, Rudolph Hornak, a New York Telephone Company employee for the previous 10 years, died. He is survived by his wife of seven years, Marianne (defendant *336 herein), and by his father, John Hornak (plaintiff herein). By his death there became due $18,000 in proceeds from Metropolitan Life Insurance Group Policy No. 18007-G, as amended, which insurance coverage had been, since 1970, provided to the deceased as a fringe benefit requiring no contribution.
Plaintiff and defendant each claim that they are the sole beneficiaries of the life insurance policy. This action was brought to determine that issue. The proceeds of the policy have been, pursuant to prior order of this court, paid into court by the Metropolitan Life Insurance Company.
FINDINGS OF FACT
The facts herein are derived from oral testimony at trial, and upon written interrogatories and documents admitted in evidence.
In June, 1966, Rudolph Hornak entered the employ of the New York Telephone Company. On July 14, 1966, he enrolled in Group Life Insurance Policy No. 18007-G, which policy was maintained by the New York Telephone Company pursuant to a 1957 agreement and master policy with the Metropolitan Life Insurance Company. As of 1966, employees, including Hornak, who wished to enroll in the group policy were required to contribute to the payment of premiums.
On July 14, 1966, Hornak signed an enrollment card by which he requested coverage under the group insurance program; authorized the company to deduct from his pay each month his contribution to the cost of the premium; and designated his father (plaintiff herein) as primary beneficiary, and his mother as contingent beneficiary. The enrollment card also provided as follows: "This authorization and deduction applies to the Group Insurance Program as presently constituted, or hereafter amended, for which I am or may become eligible and shall continue to apply until revoked by me in writing.”
On June 12, 1967, Hornak enrolled in a supplementary group life insurance program.
On June 19, 1968, Hornak indorsed a card entitled "Waiver of Group Insurance”. This card reads, in pertinent part, as follows: "I also understand and agree that by electing not to enroll in said program I am automatically deprived of, and have waived, any rights benefits or coverage, in whole or in part, under, or by reason of the existence of said Program. I *337 further understand that should I wish to enroll at a later date, I may be required to pass a medical examination (Emphasis supplied.)
Thus, on June 19, 1968, Hornak canceled this insurance. As indicated in the Metropolitan Life interrogatory, and, as this court finds, as a matter of law and fact, by canceling his coverage, Hornak expressly canceled his previous designation of beneficiary.
In relation to the cancellation, several pertinent portions of the master policy should be noted.
Section 3 of the master policy entitled "Effective Dates of Insurance” provides, in pertinent part, that "any employee requesting reinstatement of his insurance hereunder after his insurance hereunder has been discontinued in accordance with subsection (B) of Section 5 hereof must furnish at his own expense evidence of insurability satisfactory to the Insurance Company before he may be insured hereunder.”
Section 5(b) sets forth the time period for expiration of a policy upon a voluntary withdrawal or default in payment by a member.
Thus, the provisions contained in the "Waiver of Group Insurance” card signed by Hornak that conditioned re-enrollment upon the submission by the applicant to a physical examination, stemmed from the specific reinstatement procedures of the master policy.
As to the procedure for a change of beneficiary, the master policy, in conformity to section 161 of the Insurance Law provides, in pertinent part, as follows:
"Section 13. change of beneficiary — Any Employee or Retired Employee insured hereunder may, from time to time, change the Beneficiary designated in his certificate by filing written notice thereof with his employer accompanied by his certificate. Upon receipt of such notice and the certificate his employer shall thereupon endorse such change on the certificate.
"If, at the death of the Employee or Retired Employee, there be no surviving designated Beneficiary as to all or any part of the insurance, then the amount of the insurance payable for which there is no surviving designated Beneficiary shall be payable to the executors or administrators of the Employee or Retired Employee, provided, however, that the Insurance Company may, in such case, at its option, pay such *338 amount to any one of the following surviving relatives of the Employee or of the Retired Employee as Beneficiary: wife, husband, mother, father, child or children, and payment to any one or more of such surviving relatives shall completely discharge the Insurance Company’s liability with respect to the amount of insurance so paid.”
Rudolph Hornak married the defendant, Marianne Hornak, in October, 1969. Thereafter, in August, 1970, pursuant to certain labor negotiations, New York Telephone Company assumed, retroactively to April 1, 1970, full payment of the premiums of the Group Life Insurance Policy No. 18007-G. It is conceded by both sides herein that by virtue of this "amendment” to the group life policy, making it a "non-contributory” plan, Rudolph Hornak was automatically covered by the group policy.
It should be noted that while the initial interrogatory of New York Telephone indicates that "no new certificate of Insurance was issued to decedent in 1970; original certificate of insurance was issued to decedent in 1967”; this response, subsequently amended, was in error, as it failed to take into account Hornak’s 1968 waiver of coverage. Thus, at the time of the 1970 change in policy, Hornak was not enrolled in the group policy.
In 1970, New York Telephone Company employees not previously enrolled in the group policy obtained beneficiary designation forms from their local district clerk. Such employees were issued certificates of insurance upon receipt by the company of a beneficiary designation form. The court finds that it was the practice of New York Telephone Company to issue designation of beneficiary forms to all such persons. However, New York Telephone Company has no record to indicate that Rudolph Hornak completed the beneficiary form. Thus, the court, while not able to speculate as to the reasons therefor, finds that Rudolph Hornak did not designate a beneficiary subsequent to his 1970 enrollment.
CONTENTIONS OF THE PARTIES
In asserting that he is entitled to the proceeds of the policy, plaintiff contends that the amendment to the group policy effective April 1, 1970, by virtue of which Rudolph Hornak received automatic, no cost coverage, involved a "reinstatement” of the initial 1966 enrollment. Plaintiff contends that such "reinstatement” coupled with the deceased’s failure to *339 designate a new beneficiary renewed the original designation of beneficiary, to wit, plaintiff.
Not so, says defendant. She contends that reinstatement could occur only upon the conditions as outlined in section 3 of the master contract which requires proof of insurability.
The 1970 coverage, contends defendant, was a new enrollment on a new policy and not a revival. By the terms of the master policy, says defendant, the deceased’s failure to designate a beneficiary requires that the proceeds be paid to the administrator of the deceased’s estate.
THE LAW
There is but one question central to the determination of this case; that is, was the 1968 cancellation of beneficiary by the deceased pursuant to the waiver of coverage undone by the automatic re-enrollment of the deceased in 1970, absent an overt act by the deceased subsequent to re-enrollment manifesting that it was his intent to redesignate said beneficiary.
The court concludes that, on the facts presented, an automatic redesignation of beneficiary could not occur; and, therefore, there having been no beneficiary designated, the court must find for defendant.
It is well settled that "unless there is at least a substantial compliance with the contract provisions relating to a change of beneficiary” the mere expressed yet unacted upon intent of the covered party to substitute beneficiaries will not work to dislodge the rights of an existing beneficiary. (See Aetna Life Ins. Co. v Sterling, 15 AD2d 334; Molfetta v Connecticut Gen. Life Ins. Co., 138 NYS2d 168; Voros v Barna, 158 Misc 500; Ann. 78 ALR3d 466, 479, § 4, subd [b].)
By his own act waiving coverage in 1966, Rudolph Hornak was made aware that he had terminated his previous designation of beneficiary. (Cf. Micallef v Travelers Ins. Co., 234 NYS2d 134.) When by virtue of the change in premium payment, Rudolph Hornak became re-enrolled, he was given a card for the designation of beneficiary. For whatever reason, he failed to respond. This court cannot, indeed should not, speculate as to what his motives were. Did he believe that his previous designation of his father, some four years earlier and prior to his marriage, would be revived? Possibly, but not likely. Did he, as a person having obvious familiarity with the *340 insurance options available, intend to file no beneficiary card so as to allow, by operation of the master policy, the proceeds to go to his estate? Quite possible. Did he fail to receive the card? Did he lose the card? A definitive answer to these questions rests outside the limits of this mortal.
Two things are certain. First, Rudolph Hornak expressly and validly revoked a previous designation of beneficiary naming his father. Secondly, he did not undertake, by any prescribed act, to designate any person under the 1970 policy. Absent such designation, the proceeds must pass pursuant to the terms of the master policy and section 161 of the Insurance Law.
Accordingly, judgment is granted to defendant, dismissing the plaintiff's complaint and awarding the proceeds of the policy in dispute with applicable interest to the decedent’s estate.