**NEW YORK LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Lee Anthony AGEE and Lorenzo Antonio Agee, minors by their next friend, Geneva Spencer; Sallie Agee; Money & King Funeral Home, Inc.; and Leonard Brown Funeral Home, Inc., Defendants.**

No. 91–75661.

United States District Court, E.D. Michigan, S.D.

Nov. 20, 1992.

Neill T. Peters, Fitzgerald Peters, Detroit, Mich., for plaintiff New York Life.

Bernard Adams, Detroit, Mich., Irving Blum, Mark Teicher, Southfield, Mich., for defendants.

OPINION AND ORDER DENYING SALLIE AGEE'S MOTION FOR SUMMARY JUDGMENT AND DENYING GENEVA SPENCER'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Defendant Sallie Agee filed her motion for summary judgment June 26, 1992. Geneva Spencer[1] filed a "reply" to Sallie Agee's motion June 29, 1992. Additionally, Spencer filed a motion for summary judgment June 26, 1992. Sallie Agee filed an untimely "reply" to Spencer's motion August 13, 1992, which "reply" was consequently stricken. On August 24, 1992, defendant Sallie Agee filed a supplemental brief in support of its motion for summary judgment. Defendant Geneva Spencer

---

**1.** In all her actions in this litigation, Geneva Spencer is proceeding as the next friend of minor defendants Lee Anthony Agee and Lorenzo Antonio Agee.

filed a reply to the supplemental brief September 9, 1992.

## FACTS

Anthony L. Agee, the insured in this action, fathered two children, defendants Lee Anthony Agee ["Lee"] and Lorenzo Antonio Agee ["Lorenzo"], while living in Detroit, Michigan. Both Lee and Lorenzo were born out of wedlock December 21, 1984, to Geneva Spencer. Mr. Agee acknowledged paternity of the two children. In 1987, Mr. Agee moved to the state of Virginia because of his career. Sallie Agee and her three minor children resided with Mr. Agee for several months prior to their marriage September 11, 1988.

Mr. Agee subscribed to an insurance policy, issued on April 25, 1990, by plaintiff New York Life Insurance Company ["NYLIC"]. The policy insured not only Mr. Agee's two minor children but also his own life. In the event of his death, Mr. Agee's beneficiaries would collect $50,000.00. Mr. Agee placed his children as first and second beneficiaries jointly.

On January 19, 1991, Mr. Agee executed a change of beneficiary and ownership form in which he attempted to change the first beneficiary on his life insurance policy to Sallie Agee, his wife, and the second beneficiary to Lee and Lorenzo. The change of beneficiary and ownership form stated that the change of beneficiary would take effect once counter-signed by NYLIC. The form also stated that the insured would receive a copy of the counter-signed form in the mail signifying that the change of beneficiary had taken effect.

On February 13, 1991, NYLIC wrote a letter to Mr. Agee notifying him that the change of beneficiary form received by them was the incorrect form and not acceptable.[2] NYLIC enclosed the correct form to be completed, signed and returned to NYLIC. According to an affidavit by Sallie Agee, Mr. Agee never received this notification from NYLIC. Aff. of Sallie Agee attached to Defendant Sallie Agee's Supplemental Br. Sallie Agee also alleges that, even if Mr. Agee did receive the letter from NYLIC, it would not have placed Mr. Agee on notice of a problem because Mr. Agee "was totally illiterate...." *Id.* at para. 9. This is disputed by Geneva Spencer and the decedent's mother.

In February 1991, Mr. Agee and Sallie Agee physically separated, either due to marital problems or a future change in career for Mr. Agee. Mr. Agee moved Sallie Agee and her children to Detroit, Michigan, while he remained in Virginia to work. Mr. Agee never returned the form nor did he do anything to complete the change of beneficiary form. On June 21, 1991, Mr. Agee died as a result of gun shot wounds.

Both Geneva Spencer, as next friend of Lee and Lorenzo Agee, and Sallie Agee, Mr. Agee's widow, have made demands for the insurance proceeds. NYLIC has paid the insurance proceeds into the court until the issue is resolved.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The

---

**2.** It was asserted by counsel for Geneva Spencer at oral argument that the form originally submitted by Mr. Agee did not distinguish between the insurance policies taken out on Mr. Agee and on his two children. According to Spenc-
er's counsel, NYLIC could not have known to which policy the change of beneficiary form applied. However, the reasons behind the refusal of NYLIC to accept the form are immaterial to the issue at hand.

Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

 The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250,

106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### ANALYSIS

The question presented in the instant case is whether Mr. Agee's attempt to change the primary beneficiary on his life insurance policy is acceptable as proof of his intent. In order to decide this question, this court first must discern which state's law applies to the contract in dispute.

 In this diversity action, Michigan's conflict of law rules apply. *See Insurance Co. of N. Am. v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1219 (6th Cir.1980), *clarified on other grounds*, 657 F.2d 814 (6th Cir.1981), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); *Century Boat Co. v. Midland Ins. Co.*, 604 F.Supp. 472, 479 (W.D.Mich.1985), *remanded on other grounds*, 798 F.2d 1413 (6th Cir.1986). Michigan's conflict of law rules require that construction of a contract be governed by the law of the state in which the last act necessary to make the contract a binding agreement occurs. *Ohio v. Eubank*, 295 Mich. 230, 233–34, 294 N.W. 166 (1940).[3]

 The last act necessary to make an insurance contract a binding agreement is the counter-signature of the insurer. *Century Boat*, 604 F.Supp. at 479; *Chrysler Corp. v. Insurance Co. of N. Am.*, 328 F.Supp. 445, 449 (E.D.Mich.1971). Although not specifically alleged in the pleadings, because NYLIC's principal place of business is New York, this court is led to

---

**3.** It is immaterial that all purported beneficiaries are citizens or residents of the state of

Michigan. *See New England Mut. Life Ins. Co. v. Gray*, 786 F.2d 406, 409 (6th Cir.1986).

believe that the insurance policy was counter-signed in New York. Therefore, New York law applies in this case.

 Under the laws of New York, all that is needed to effect a change of beneficiary is substantial compliance with the policy's provisions. *Schoenholz v. New York Life Ins. Co.*, 234 N.Y. 24, 136 N.E. 227, 228 (1922); *Connecticut Gen. Life Ins. Co. v. Boni*, 48 A.D.2d 621, 368 N.Y.S.2d 1, 3 (1975). Because NYLIC has interpleaded the purported beneficiaries, strict compliance with the insurance company's requirements is unnecessary. *Cable v. Prudential Ins. Co. of Am.*, 89 A.D.2d 636, 453 N.Y.S.2d 86, 87–88 (1982).

> Although it is possible to effect a change of beneficiaries without strict compliance with policy provisions, some affirmative act on the part of the insured to accomplish the change is required; mere intent to make a change is not sufficient.

*Hunnell v. Hunnell*, 45 A.D.2d 521, 359 N.Y.S.2d 926, 929 (1974) (citations omitted), *aff'd*, 37 N.Y.2d 931, 379 N.Y.S.2d 841, 342 N.E.2d 602 (1975). Equitable aid "will be denied where the assured fail[s] to do all which might reasonably have been possible to effectuate his wishes." *Curran v. Nakelski*, 7 Misc.2d 103, 166 N.Y.S.2d 25, 26 (N.Y.Sup.Ct.1957).

 In the instant case, there is a factual question whether Mr. Agee failed to do all that was reasonably possible to change the primary beneficiary on his life insurance policy. Mr. Agee sent in a change of beneficiary form in January 1991. The form was rejected by NYLIC in February 1991. Four months passed before Mr. Agee's death. In that time, Mr. Agee did not attempt to refile the correct change of beneficiary form provided to him by NYLIC. All that remained was not the ministerial act of the insurer counter-signing the form, but the affirmative act of returning the form to the insurer. New York case law is replete with examples of insureds who have failed to timely file change of beneficiary notices and whose intended primary beneficiaries have failed in their attempts to collect on the policies. *See, e.g., Boni*, 368 N.Y.S.2d at 3; *Hunnell*, 359 N.Y.S.2d at 928–29; *Hornak v. Hornak*, 101 Misc.2d 335, 420 N.Y.S.2d 964, 967 (N.Y.Sup.Ct.1979); *Curran*, 166 N.Y.S.2d at 26; *Voros v. Barna*, 158 Misc. 500, 285 N.Y.S. 926, 933–34 (N.Y.City Ct.1935); *cf. United Life & Accident Ins. v. Reynolds*, 62 F.2d 776, 776 (2d Cir.1933) (applying Connecticut law); *National W. Life Ins. Co. v. Schmeh*, 749 P.2d 974, 975 (Colo.Ct. App.1987), *rev'd sub nom. on other grounds, Napper v. Schmeh*, 773 P.2d 531 (Colo.1989); *Resnek v. Mutual Life Ins. Co. of N.Y.*, 286 Mass. 305, 190 N.E. 603, 605 (1934); *Rasmussen v. Mutual Life Ins. Co. of N.Y.*, 70 N.D. 295, 293 N.W. 805 (1940).[4]

These cases, however, involved insureds who were not physically or educationally prevented from effectively expressing their intent. In the instant case, defendant Sallie Agee has alleged that Mr. Agee was illiterate; defendant Sallie Agee also alleges that Mr. Agee had moved from the address to which NYLIC's February 13, 1991 letter had been sent and had not requested his mail to be forwarded to his then current address.

Defendant Spencer disputes defendant Sallie Agee's factual claim that Mr. Agee was illiterate. Defendant Spencer also disputes the factual claim that during and surrounding the month of February 1991, Sallie Agee and Mr. Agee were not living at the address to which NYLIC's February 13, 1991 letter was sent.

Thus, there is a genuine issue of material fact as to whether Mr. Agee received the notification from NYLIC. If he did receive the letter from NYLIC, there remains a genuine issue of material fact as to whether Mr. Agee was illiterate and therefore

---

**4.** New York case law also has many examples of insureds who have died while trying to comply with their policies' provisions. *See, e.g., Lopez v. Massachusetts Mut. Life Ins. Co.*, 170 A.D.2d 583, 566 N.Y.S.2d 359, 360 (N.Y.App.Div.1991) (handwritten letter expressing interest in changing beneficiaries mailed days before insured's death); *Cable*, 453 N.Y.S.2d at 636 (the day before the insured was killed he expressed an intent to his insurance agent to change his beneficiary). In *Lopez* and *Cable*, the intended beneficiaries prevailed.

**58**

incapable of comprehending the letter from NYLIC notifying him that the intent he had expressed in the first form sent to NYLIC had not been properly registered. Because these genuine issues of material fact remain, the motions for summary judgment must be denied.

### ORDER

Therefore, it is hereby ORDERED that Geneva Spencer's motion for summary judgment is DENIED.

It is further ORDERED that Sallie Agee's motion for summary judgment is hereby DENIED.

SO ORDERED.